UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

RE: TMB VIEUX CARRE, LLC
          DEBTOR

\* CASE NO. 18-10240
\*
\* CHAPTER 11
\*
\* SECTION "B"
\*
\* JUDGE JERRY A. BROWN
\*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## Motion for Relief from the Automatic Stay and Incorporated Memorandum

**Now Into Court**, through its undersigned counsel of record comes Girod Loanco, L.L.C. ("Girod Loanco" or "Mover"), who moves this Court for an order granting it relief from the automatic stay provided for by 11 U.S.C., §362, in order that Mover may protect its interest in Debtor's movable property as hereafter described.

In support of this motion, Mover states as follows:

### Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1334, 28 U.S.C. §157(a).

### Core Proceeding

This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(G).

### Procedure

Procedurally, this matter is governed by Federal Rules of Bankruptcy Procedure 4001 and 9014, and 11 U.S.C. §362.

## Background

### I.

Debtor filed a Voluntary Bankruptcy Petition For Relief Under Chapter 11 of the Bankruptcy Code, in this Court on February 1, 2018.

### II.

Mover, Girod Loanco, L.L.C., ("Girod Loanco" or "Mover") is the successor in interest to the Federal Deposit Insurance Corporation (FDIC-R) the receiver for First NBC Bank.

### III.

As of January 31, 2018, Debtor is indebted unto Mover in the principal sum of $2,799,700.00, plus non-default accrued interest in the amount of $116,250.68 plus default interest, late charges, court costs, reasonable attorney's fees, expenses, and other fees and charges as provided for in the Promissory Note as amended signed by Debtor, for the following reasons to-wit:

### IV.

Debtor, on January 7, 2015, executed a Promissory Note payable to the order of the First NBC Bank, in the principal amount of $100,000.00, payable on demand, with a variable interest rate as provided for therein until paid, plus default interest, reasonable attorney's fees, together with late charges, court costs, expenses, and other fees and charges as provide therein. This note was amended to, among other things, increase the principal amount of the Promissory Note eleven times. The last Amendment increased the principal amount of the Promissory Note to $2,799,700.

### V.

The original note and the Amendments thereto were secured by, among other things, a Commercial Security Agreement executed on the same date and for the same amount of the

Promissory Note which Commercial Security Agreement did affect and hypothecate in favor of Mover, the following described property, to-wit:

"All Inventory, Chattel Paper, Accounts, Equipment, General Intangibles and Fixtures"

## VI.

The Original Note and the Amendments thereto were further secured by a UCC-1 filed on March 2, 2015 with the Jefferson Parish Clerk of Court under file number 26-344684 by and in favor of First NBC Bank covering the following property to-wit:

> "All inventory, chattel paper, accounts, equipment, general intangibles and fixtures; whether any of the foregoing is owned now or acquired later; all accessions additions, replacements, and substitutions relating to any of the foregoing; all documents and instruments; all related equipment, etc."

## VII.

The above described Commercial Security Agreement and UCC1 provided a continuing security interest to secure present and future indebtedness of the Debtor to Mover. Debtor confessed judgment in the Promissory Note and Amendments thereto and the Commercial Security Agreement and consented to the seizure and sale of the secured property under executory process if the note was not paid in accordance with its terms; waived the demand for payment prior to seizure; and further waived the benefits of appraisal of the property prior to judicial sale.

## VIII.

Debtor became in default of said Promissory Note as amended on June 21, 2017, when payment was not made pursuant to demand under the aforementioned note, amendments, and/or security agreement, whereupon the entire balance and non-default interest due on said note became due under the terms of the said note together with late charges and default interest.

### IX.

Mover filed a Petition for Executory Process with the Civil District Court for the Parish of Orleans on February 1, 2018 under CaseNumber 2018-01026 Division F, attached hereto as Exhibit A. A Writ of Seizure and Sale was issued the same day, attached hereto as Exhibit B.

### X

On or about November 6, 2017, prior to the Debtor's bankruptcy filing, 309 Decatur, LLC filed a Petition to Evict Debtor in the Civil District Court for the Parish of Orleans in Case Number 2017-10656, Section "D", seeking a Judgment of Eviction, which was granted on December 15, 2017. On or about December 18, 2017, Landlord filed an Ex parte Motion for the Issuance Of A Warrant For Possession Of Premises, which was also granted.

### Law And Argument

#### I.  THE DEBTOR'S LANDLORD IS ENTITLED TO EVICT THE DEBTOR

As a general rule, the filing of a bankruptcy petition automatically stays a creditor from continuing a proceeding against the debtor that was or could have been commenced before the bankruptcy petition was filed. 11 U.S.C. §362(a)(1). However, while the filing of a Chapter 11 petition automatically stays most judicial actions against the debtor, it does not apply to a lease which had been terminated prior to the filing of the Chapter 11 bankruptcy petition. §362(b)(10).

In *re Policy Realty Corp.*, 242 B.R. 121 (S.D.N.Y. 1999) the lessor, Treber, terminated a lease with its tenant for failure to pay its rent. The sublessee, Policy Realty, realizing that the termination of the lease would terminate its own sublease, filed for bankruptcy protection. The lessor sought an order declaring that its action to terminate the lease was exempt from the

provisions of the automatic stay. The bankruptcy court denied the lessor's motion, forcing the lessor to appeal. On appeal, the District Court for the Southern District of New York held that the automatic stay went into effect upon the sublessee's bankruptcy filing after the state court had already ordered accelerating the lease and fixing the day that the sublessee filed its bankruptcy petition as the day on which the lease would terminate automatically. The court held that the sublease was not property of the estate and that the automatic stay did not apply.

The court explained:

The commencement of a bankruptcy case creates an estate. Section 541 broadly defines the property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1). However §541(b)(2) specifically excludes from this estate: any interest of the debtor as a lessee under the lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ... during the case. 11 U.S.C. §541(b)(2). *Policy Realty*, 242 B.R. at 127-128.

The court further explained:

Section 362 defines the range of the automatic stay. Paragraph (b)(10) specifically excludes from this protection: any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property. 11 U.S.C. §362(b)(10). Although the Bankruptcy Code does not defined the terms "terminated" and "stated term," the phrase "stated term" which is not limited in any way and the legislative history of §362 support the conclusion that Treber's accelerated termination pursuant to Article 21 of the Net Lease is covered by 541(b)(2) and 362(b)(10). According to the legislative history, this section is intended to permit landlords to proceed quickly in state court to reclaim possession of the non-residential leased premises where the lease expires by its own terms and to finalize landlord/tenant disputes. See *In re Neville*, 118 B.R. 14 (Bankr.E.D.N.Y. 1990). *Policy Realty*, 242 B.R. at 128.

With respect to the determination of property rights regarding a lease or leasehold interest, the court explained:

Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law. See *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *Policy Realty*, 242 B.R. at 128.

Under Louisiana law, the lease contract itself is the law between the parties; it defines their respective rights and obligations so long as it does not affect rights of others and is not contrary to public good. La. Civil Code Article 1983. Louisiana Code of Civil Procedure Article 4701 provides the procedure for a lessor to obtain possession of the Leased Premises when a lease is terminated. Article 4701 reads as follows:

> "When a lessee's right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.
>
> If the lease has no definite term, the notice required by law for its termination shall be considered as a notice to vacate under this Article. If the lease has a definite term, notice to vacate may be given not more than thirty days before the expiration of the term.
>
> A lessee may waive the notice requirements of this Article by written waiver contained in the lease, in which case, upon termination of lessee' right of occupancy for any reason, the lessor or his agent may immediately institute eviction proceedings in accordance with Chapter 2 of Title XI of the Louisiana Code of Civil Procedure."

In *327 Bourbon Street, Inc. v. Pepe, Inc.*, 243 So.2d 262, 564 (La. 1971), the Louisiana Supreme Court stated, "instead of enforcing the lease contract by suing for the accelerated balance, a landlord may, as here, sue for possession of the premises for nonpayment of the rent or breach of other lease conditions. He may thus (at least if judgment results) terminate the lease by evicting the tenant."

In the instant case, the Lease provides that upon the occurrence of any event of default, 309 Decatur may "cancel and terminate this Lease effective immediately or as of the date which Lessor may select." See Page 15, Article 20 of Rec Doc 8

309 Decatur elected to terminate the Lease effective October 30, 2017 and demanded that Debtor vacate the Leased Premises and when the Debtor failed to vacate Lessor commenced an eviction proceeding against the Debtor on November 6, 2017. On December 15, 2017, the State Court Proceedings granted a Judgment of Eviction in favor of 309 Decatur and against Debtor, ordering Debtor to vacate the Leased Premises and deliver possession to 309 Decatur within twenty-four hours of the rendition of the judgment. After the failure of Debtor to vacate the Leased Premises, 309 Decatur brought an Ex parte Motion for the Issuance of a Warrant for Possession of the Premises, which was signed by the court on December 18, 2017.

In other bankruptcy cases with facts similar to the facts of this case, where a bankruptcy petition was filed after commencement of an eviction proceeding, the courts have held that the eviction proceedings either were not stayed or the courts have lifted the stay to allow for completion of the proceedings commenced pre-petition. For example, in *Bell v. Alden Owners, Inc.*, 199 B.R. 451 (S.D.N.Y. 1996), the debtor filed her petition for relief minutes after the actual eviction began, but the landlord did not receive notice of the bankruptcy until after the eviction was complete. The court stated:

> The filing of a bankruptcy petition does not resurrect a lease, and a bankruptcy court does not have the power to resurrect a lease which was terminated prior to the filing of the lessee's bankruptcy petition. Furthermore, a state court judgment issued prior to the filing of a debtor's bankruptcy case is *res judicata* in the bankruptcy case, and the debtor may not relitigate issues already decided by the state court. *Id.* at 458.

The court found that the debtor no longer had an interest that could be protected by the automatic stay.

In the case of *Staffmark Investment, LLC v. Foote d/b/a Tomorrow Childe Christian Educare Academy, et al*, 277 B.R. 393 (Bankr. E.D. Ark. 2002), the landlord had obtained a writ of possession and when the sheriff scheduled the eviction, the tenant filed for bankruptcy protection on the morning that the eviction was scheduled to take place. The court explained:

> a lease of nonresidential real property that has terminated prior to the bankruptcy's filing is excluded from the debtor's estate under 11 U.S.C. §541(b)(10). Because the debtor has no interest in a validly terminated lease, the automatic stay does not preclude a lessor from taking possession of the property leased to a debtor under a terminated nonresidential real property lease. 11 U.S.C. §362(b)(10). Accordingly, it is not necessary for the lessor to move for relief from the stay in order to regain possession of nonresidential real property held by a debtor under a terminated lease. *Id.* at 396.

In the instant case, 309 Decatur has requested that this Court recognize that the Lease terminated on October 30, 2017, when 309 Decatur sent Debtor a Notice of Termination of Lease and Demand to Vacate the Leased Premises letter, effective immediately. Furthermore, 309 Decatur has requested that the Court determine that the automatic stay does not apply to any further action that may be necessary to recover possession of the Leased Premises by 309 Decatur, pursuant to 11 U.S.C. §362(b)(10) and that 309 Decatur may proceed with any steps necessary to recover possession of the Leased Premises in accordance with the Judgment of Eviction and Warrant for Possession issued in the State Court Proceedings.

Alternatively, in the event the Court determines that the Lease did not terminate prepetition and does not fall within the exception set forth in 11 U.S.C. §362(b)(10), 309 Decatur hasmoved this Court for entry of an Order of Relief pursuant to 11 U.S.C. §362(d), lifting the

automatic stay to allow 309 Decatur to proceed with the steps necessary to complete the eviction of the Debtor from the Leased Premises. Bankruptcy Code Section 362(d)(1) allows relief from the automatic stay to be granted upon a showing of "cause" for relief. 11 U.S.C. §362(d)(1). Cause for stay relief includes lack of adequate protection of an interest in property of a party in interest.

The policy of the Bankruptcy Code and the facts of this case weigh in favor of the landlord's request to lift the automatic stay in the instant case. 309 Decatur's interest in its property is not being adequately protected. The Debtor has failed to make base rent payments as well as payments due under the Lease for real estate taxes as of the date of this Motion. Debtor's ability to successfully fulfill its obligations to 309 Decatur is seriously called into question by its past performance. 309 Decatur is being asked to forego the use of its property with little likelihood of receiving compensation. This result is forbidden under §362(d)(1) and accordingly, cause exists for granting relief from the automatic stay to allow 309 Decatur to proceed with the eviction of the Debtor from the Leased Premises.

## II  CAUSE EXISTS FOR LIFTING THE AUTOMATIC STAY CURRENTLY PREVENTING MOVER FROM FORECLOSING ON ITS COLLATERAL

As the landlord, 309 Decatur, LLC is entitled to an Order from this Court allowing it to proceed with evicting Debtor from the leased premises at 309 Decatur Street in the city of New Orleans, cause exists to allow Mover relief from the automatic stay currently in effect. There is no equity in the movable property held as collateral by Mover above and beyond its security interest in same, and the Debtor will be unable to reorganize once possession of its sole place of business is returned back to the landlord, 309 Decatur, LLC.

Courts have held that the Debtor must show **more** than just that the Property is "necessary to an effective reorganization." *In re International Barge Co.,* 1992 U.S. Dist. LEXIS 1197, *5 (E.D.L.A. 1992)

> What [Section 362(d)(2)(B)] requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means...that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'
> *Id, citing United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* 484 U.S. 365, 375-76 (1988).

The Sixth Circuit in *Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985), noted that:

> the purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *See In re Dolton Lodge Trust No. 35188*, 22 B.R. 918, 922 (Bankr. N.D. Ill. 1982). "If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost *its raison d'etre*. . . .
> *In re Ironsides, Inc.*, 34 Bankr. 337, 339 (Bankr. W.D. Ky. 1983).

The Debtor will additionally be unable to reorganize due to its lack of working capital and lack of ability to obtain trade credit. There is no reasonable possibility of a successful reorganization of TMB Vieux Carre within a reasonable time.

Cause to grant Mover's request to lift stay also arises due to the Debtor's lacking the financial wherewithal to provide Adequate Protection to Mover in the event Mover's collateral is placed on the street should the landlord be allowed to complete the eviction. Such adequate protection would, of necessity, include the relocation of the collateral to a safe and secure location at Debtor's expense, Debtor's insuring of the collateral against fire or other loss, and the Debtor's issuance of periodic payments to Mover necessary to cover any diminution of the collateral's value. *In re Timbers of Inwood Forest Associates, Ltd.*, 793 F.2d 1380, 1388 (5th Cir. 1986). Adequate protection, as defined by 11 U.S.C. § 361, may be cash payments, additional or replacement liens, or such other relief as to provide "the indubitable equivalent of such entity's interest in such property." *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

The purpose of adequate protection is to guard the secured creditor's interest from a decline in the value of the collateralized property. *In re JCP Props.*, 540 B.R. 596, 613 (Bankr. S.D. Tex. 2015). The creditor seeking relief must provide evidence that the value of the collateralized property is declining or is threatened to decline in value as a result of the automatic stay. *Id.* In this case, Mover is in danger of losing the entire value of the collateralized property in the event Debtor is evicted without being able to provide any form of adequate protection. The Sheriff will place the property on the street, and Mover will be unable to act to protect the property due to the Stay.

**Wherefore**, Mover, Girod Loanco, L.L.C.,

prays:

1. That this Court after notice and hearing as required on this matter, grant Mover relief from the automatic stay pursuant to 11 U.S.C. §362(d) in view of the existence of good cause shown; and

2. That this Court issue an Order modifying the automatic stay, and allowing Girod Loanco, Mover to proceed with all steps necessary to go forward with the Writ of Seizure and Sale it obtained on February 1, 2018; and

3. For such additional relief as law, equity, and the nature of this case may permit.

Respectfully Submitted:

AARON & GIANNA PLC

WILLIAM D. AARON, JR. (LSBA #2267)T.A.
DEWAYNE L. WILLIAMS (LSBA #27685)
COURTNEY H. PAYTON (LSBA #30663)
201 St. Charles Avenue, Suite 3800
New Orleans, Louisiana 70170
Telephone: (504) 569-1800
**Attorneys for Girod Loanco, LLC**

## CERTIFICATE OF SERVICE

**I Hereby Certify** that a copy of the above and foregoing pleading has been served as follows:

a. on all counsel of record by electronically filing a true and correct copy of the foregoing pleading with the Clerk of Court by using the Court's CM/ECF system, which will send a Notice of Electronic Filing to all parties, on this 9th day of February, 2018;

b. Sending same via the U.S. Postal Service, first class postage prepaid on this 9th day of February, 2018 to the following:

Bridget Brennan Tyrrell
1238 Third Street
New Orleans, LA 70130

Office of United States Trustee
400 Poydras Street, Suite 2110
New Orleans, LA 70130

Ellen C. Brennan
1238 Third Street
New Orleans, LA 70130

309 Decatur, LLC
c/o Marcus L. Giusti
Hannan, Giusti, & Hannan LLP
2201 Ridgelake Drive, Suite 200
Metairie, LA 70001

Theodore M. Brennan, Jr.
1238 Third Street
New Orleans, LA 70130

TMB Vieux Carre, LLC
1238 Third Street
New Orleans, LA 70130

_____
William D. Aaron, Jr